# No. 25-2332

IN THE
**UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**

**MATTHEW BOERMEESTER,**
*Plaintiff-Appellant,*
*v.*
**UNIVERSITY OF SOUTHERN CALIFORNIA et al.,**
*Defendants-Appellees.*

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA
FERNANDO M. OLGUIN, DISTRICT JUDGE • CASE NO. 2:19-CV-02137-FMO-MBK

# ANSWERING BRIEF

**HORVITZ & LEVY LLP**
SCOTT P. DIXLER
3601 WEST OLIVE AVENUE, 8TH FLOOR
BURBANK, CALIFORNIA 91505-4681
(818) 995-0800

**HORVITZ & LEVY LLP**
JEREMY B. ROSEN
LACEY L. ESTUDILLO
505 SANSOME STREET, SUITE 1550
SAN FRANCISCO, CALIFORNIA 94111-3149
(415) 462-5600

**PAZZANI & SANDHU LLP**
KAREN J. PAZZANI
JOSEPH V. MARRA, III
PUNEET K. SANDHU
700 NORTH CENTRAL AVENUE, SUITE 480
GLENDALE, CALIFORNIA 91203-3226
(213) 362-1860

ATTORNEYS FOR DEFENDANTS AND APPELLEES
**UNIVERSITY OF SOUTHERN CALIFORNIA, GRETCHEN DAHLINGER MEANS,** AND **AINSLEY CARRY**

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 34. Disclosure Statement under FRAP 26.1 and Circuit Rule 26.1-1

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form34instructions.pdf*

**9th Cir. Case Number(s)** 25-2332

Name(s) of party/parties, prospective intervenor(s), or amicus/amici filing this form:

University of Southern California
Gretchen Dahlinger Means
Dr. Ainsley Carry

Under FRAP 26.1 and Circuit Rule 26.1-1, I make the following disclosures:

1. I disclose the following information required by FRAP 26.1(a) and/or Circuit Rule 26.1-1(b) for any nongovernmental corporation, association, joint venture, partnership, limited liability company, or similar entity[1] which is a party, prospective intervenor, or amicus curiae in any proceeding, or which the government identifies as an organizational victim below in section 2 of this form,[2] or which is a debtor as disclosed below in section 3 of this form.

   a. Does the party, prospective intervenor, amicus, victim, or debtor have any parent companies? Parent companies include all companies that control the entity directly or indirectly through intermediaries.

      ☐ Yes ☒ No

      If yes, identify all parent corporations of each entity, including all generations of parent corporations *(attach additional pages as necessary)*:

   b. Is 10% or more of the stock of the party, prospective intervenor, amicus, victim, or debtor owned by a publicly held corporation or other publicly held entity?

      ☐ Yes ☒ No

[1] A corporate entity must be identified by its full corporate name as registered with a secretary of state's office and, if its stock is publicly listed, its stock symbol or "ticker."

[2] To the extent it can be obtained through due diligence.

If yes, identify all such owners for each entity *(attach additional pages as necessary)*:

2. In a criminal case, absent good cause shown, the government must identify here any organizational victim of the alleged criminal activity:

3. In a bankruptcy case, the debtor, the trustee, or, if neither is a party, the appellant must identify here each debtor not named in the court of appeals caption:

4. Are you aware of any judge serving on this Court who participated at any stage of the case, either in district court, administrative proceedings, or in related state court proceedings?
   ☐ Yes ☒ No

   If yes, list the name of the judge and the case name, case number, and name of court of the related proceedings:

I

certify that *(select only one)*:

☐ this is the first disclosure statement filed in the above-referenced case by the above-identified party/parties, prospective intervenor(s), or amicus/amici, and this disclosure statement complies with FRAP 26.1 and Circuit Rule 26.1-1.

☒ the party/parties, prospective intervenor(s), or amicus/amici submitting this supplemental disclosure statement has previously filed a compliant disclosure statement in this case, and this updated disclosure statement discloses changed or additional information.

☐ I have reviewed this form, FRAP 26.1, and Circuit Rule 26.1-1 and, to the best of my knowledge, have no information to disclose at this time.

**Signature** s/ Lacey L. Estudillo **Date** November 3, 2025

*(use "s/[typed name]" to sign electronically-filed documents)*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................... v

INTRODUCTION .................... 1

JURISDICTIONAL STATEMENT .................... 3

STATEMENT OF ISSUES PRESENTED .................... 4

STATEMENT OF THE CASE .................... 5

A. While drunk, USC student Matthew Boermeester grabs the neck of his ex-girlfriend, a fellow student, and presses her against a wall. Another student observes the altercation and reports it to USC, which opens an investigation. .................... 5

B. Roe initially confirms Boermeester's intimate partner violence but then recants after Boermeester is notified of the investigation. Boermeester admits to putting his hand on her neck. .................... 6

C. USC concludes that Boermeester violated its domestic violence policy and, after affording Boermeester multiple layers of review, expels him .................... 9

D. Boermeester petitions unsuccessfully for a writ of mandate in state court and appeals. .................... 10

E. While Boermeester's state court appeal is pending, he files this federal action, which is stayed pending resolution of the state court proceedings. .................... 11

F. The California Court of Appeal reverses in a divided decision. The California Supreme Court grants review. .................... 12

G. The California Supreme Court sides with USC that its process was fair, reverses, and remands .................... 15

H. On remand, the Court of Appeal affirms the denial of Boermeester's petition, finding substantial evidence supports USC's decision with no denial of fair process. ....... 18

I. After the conclusion of the state court proceedings, USC moves to dismiss Boermeester's federal complaint. The district court grants the motion, and Boermeester appeals. ....... 19

SUMMARY OF THE ARGUMENT ....... 21

STANDARD OF REVIEW ....... 22

ARGUMENT ....... 24

I. Boermeester failed to exhaust his judicial remedies, barring his Title IX and state-law claims. ....... 24

A. A person aggrieved by a quasi-judicial administrative decision, including a university disciplinary proceeding, must *successfully* challenge the decision in a mandamus action before suing for damages ....... 24

B. Boermeester's state-law and Title IX claims are barred as a matter of law because he did not succeed in overturning USC's quasi-judicial decision. ....... 28

II. All of Boermeester's claims fail because issue preclusion bars him from relitigating issues resolved against him in state court. ....... 30

A. A state court decision upholding an administrative decision has preclusive effect if the administrative proceeding was sufficiently judicial, it does not contravene legislative intent, and the threshold elements of issue preclusion are satisfied. ....... 30

B. USC's disciplinary proceeding was sufficiently judicial ....... 32

C. Affording preclusive effect here does not contravene the Legislature's intent. ....... 35

D. The threshold elements of issue preclusion are satisfied.......... 38

1. The threshold elements of issue preclusion.......... 38

2. Boermeester's Title IX causes of action fail because he is precluded from relitigating that USC's disciplinary process was unfair and biased.......... 40

3. Boermeester's § 1983 claim fails because he is precluded from relitigating the California Supreme Court's finding that there was no state action. The finding was correct in any event.......... 45

4. Boermeester's contract claim fails because his assertions of breach are barred by issue preclusion. .......... 47

5. Boermeester's promissory estoppel claim fails because he cannot establish that he was injured by relying on USC's policies. .......... 48

6. Boermeester's negligence claim fails because he cannot establish that USC breached a duty of care. .......... 50

7. Boermeester's IIED claim fails because he is precluded from establishing outrageous conduct.......... 51

E. Boermeester's arguments against issue preclusion are meritless. .......... 52

III. The district court properly dismissed Boermeester's state law and § 1983 claims for failure to state a claim. .......... 54

A. Boermeester's complaint fails to state a claim under § 1983.......... 54

1. A private university's student disciplinary investigation is not state action. .......... 54

2. The allegations in Boermeester's complaint do not satisfy any of the state-actor tests. ....... 56

B. Boermeester's complaint fails to state a claim for breach of contract and promissory estoppel....... 59

C. Boermeester's complaint fails to state a claim for negligence. ....... 61

D. Boermeester's complaint fails to state a claim for IIED. ..... 62

IV. Denying leave to amend was proper because any amendment would be futile. ....... 65

CONCLUSION ....... 67

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alcorn v. Anbro Eng'g, Inc.*,
2 Cal.3d 493 (1970) .......... 51

*Allen v. McCurry*,
449 U.S. 90 (1980) .......... 36

*Alliant Techsystems, Inc. v. United States*,
186 F.3d 1379 (Fed. Cir. 1999) .......... 33

*Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.*,
116 Cal.App.4th 1375 (2004) .......... 59

*Basurto v. Imperial Irrigation Dist.*,
211 Cal.App.4th 866 (2012) .......... 35

*Benavidez v. Cty. of San Diego*,
993 F.3d 1134 (9th Cir. 2021) .......... 23

*Blum v. Yaretsky*,
457 U.S. 991 (1982) .......... 58

*Boermeester v. Carry*,
100 Cal.App.5th 383 (2024) .......... 7, 8, 18, 19, 41, 42

*Boermeester v. Carry*,
15 Cal.5th 72 (2023) .......... *passim*

*Boermeester v. Carry*,
263 Cal.Rptr.3d 261 (2020), *rev'd,* 15 Cal.5th 72 (2023) .......... *passim*

*Boermeester v. Carry*,
472 P.3d 1062 (Cal. 2020) .......... 15

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*,
222 Cal.App.3d 1371 (1990) .......... 47

*Caviness v. Horizon Cmty. Learning Ctr., Inc.*,
590 F.3d 806 (9th Cir. 2010) .................................................. 56

*Cervantes v. Countrywide Home Loans, Inc.*,
656 F.3d 1034 (9th Cir. 2011) ........................................... 65, 66

*Christensen v. Superior Court*,
54 Cal.3d 868 (1991) ............................................................. 62

*City of Fresno v. Superior Court*,
188 Cal.App.3d 1484 (1987) ................................................... 26

*Clements v. Airport Auth. of Washoe Cnty.*,
69 F.3d 321 (9th Cir. 1995) .................................................... 30

*Cochran v. Cochran*,
65 Cal.App.4th 488 (1998) ..................................................... 64

*Cohen v. ConAgra Brands, Inc.*,
16 F.4th 1283 (9th Cir. 2021) ................................................. 23

*Coleman v. Republic Indem. Ins.*,
132 Cal.App.4th 403 (2005) .................................................... 51

*Doe v. Oberlin Coll.*,
60 F.4th 345 (6th Cir. 2023) ................................................... 58

*Doe v. Purdue Univ.*,
928 F.3d 652 (7th Cir. 2019) ................................................... 44

*Doe v. Regents of Univ. of Cal.*,
23 F.4th 930 (9th Cir. 2022) ........................................... 40, 43, 44

*Doe v. Regents of the Univ. of California*,
891 F.3d 1147 (9th Cir. 2018) ................................ 23, 29, 44, 54

*Doe v. Snyder*,
28 F.4th 103 (9th Cir. 2022) ................................................... 37

*Eilrich v. Remas*,
839 F.2d 630 (9th Cir. 1988) .................................. 33, 37, 46, 53

*Emeldi v. Univ. of Oregon*,
698 F.3d 715 (9th Cir. 2012) ........................................ 37

*Eminence Cap., LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) ........................................ 65, 66

*Foman v. Davis*,
371 U.S. 178 (1962) ........................................ 65

*Gikas v. Zolin*,
6 Cal.4th 841 (1993) ........................................ 32

*Grabowski v. Arizona Bd. of Regents*,
69 F.4th 1110 (9th Cir. 2023) ........................................ 37

*Groten v. California*,
251 F.3d 844 (9th Cir. 2001) ........................................ 23

*Heineke v. Santa Clara Univ.*,
965 F.3d 1009 (9th Cir. 2020) ........................................ 22, 55, 56, 57, 58, 59

*Hernandez v. City of Pomona*,
46 Cal.4th 501 (2009) ........................................ 39

*Holder v. California Paralyzed Veterans Ass'n*,
114 Cal.App.3d 155 (1980) ........................................ 26, 28

*Hughes v. Pair*,
46 Cal.4th 1035 (2009) ........................................ 62, 63, 64

*In re Nance*,
__ F.4th __, No. 24-2745, 2025 WL 2908823 (9th Cir. Oct. 14, 2025) ........................................ 53

*Interior Sys., Inc. v. Del. E. Webb Corp.*,
121 Cal.App.3d 312 (1981) ........................................ 26

*Intri-Plex Techs., Inc. v. Crest Grp., Inc.*,
499 F.3d 1048 (9th Cir. 2007) ........................................ 23

*Jamgotchian v. Ferraro*,
93 F.4th 1150 (9th Cir. 2024) ........................................ 28, 36

*Jensen v. Lane Cnty.*,
222 F.3d 570 (9th Cir. 2000) .......... 46, 54

*Johnson v. City of Loma Linda*,
24 Cal.4th 61 (2000) .......... 24

*Jones v. Wachovia Bank*,
230 Cal.App.4th 935 (2014) .......... 49

*Kashmiri v. Regents of Univ. of Cal.*,
156 Cal.App.4th 809 (2007) .......... 60, 61

*Keech v. Berkeley Unified Sch. Dist.*,
162 Cal.App.3d 464 (1984) .......... 61

*Kenneally v. Lungren*,
967 F.2d 329 (9th Cir. 1992) .......... 54

*Knickerbocker v. City of Stockton*,
199 Cal.App.3d 235 (1988) .......... 26, 30

*Kremer v. Chem. Const. Corp.*,
456 U.S. 461 (1982) .......... 31, 37

*Logan v. Bennington Coll. Corp.*,
72 F.3d 1017 (2d Cir. 1995) .......... 58

*Logan v. S. Cal. Rapid Transit Dist.*,
136 Cal.App.3d 116 (1982) .......... 26, 29

*Love v. Villacana*,
73 F.4th 751 (9th Cir. 2023) .......... 23

*Lucido v. Superior Court*,
51 Cal.3d 335 (1990) .......... 39, 43, 46, 49, 52

*Migra v. Warren City Sch. Dist. Bd. of Educ.*,
465 U.S. 75 (1984) .......... 30

*Miller v. Cnty. of Santa Cruz*,
39 F.3d 1030 (9th Cir. 1994) .......... 24, 25, 53

*Mir v. Little Co. of Mary Hosp.*,
844 F.2d 646 (9th Cir. 1988) ........................................................ 29

*Montana v. United States*,
440 U.S. 147 (1979) .................................................................... 38

*Murray v. Alaska Airlines, Inc.*,
50 Cal.4th 860 (2010) .............................................................. 32, 34

*Pacific Lumber Co. v. State Water Res. Control Bd.*,
37 Cal.4th 921 (2006) .............................................................. 33, 35

*People v. Sims*,
32 Cal.3d 468 (1982) ..................................................................... 32

*Pinsker v. Pac. Coast Soc'y of Orthodontists*,
12 Cal.3d 541 (1974) ................................................................ 15, 16

*Potter v. Firestone Tire & Rubber Co.*,
6 Cal.4th 965 (1993) ................................................................ 51, 62

*ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*,
754 F.3d 754 (9th Cir. 2014) ........................................................ 31

*Rendell-Baker v. Kohn*,
457 U.S. 830 (1982) ........................................................... 45, 55, 56

*Rojo v. Kliger*,
52 Cal.3d 65 (1990) ...................................................................... 26

*Ross v. Alaska*,
189 F.3d 1107 (9th Cir. 1999) ...................................................... 53

*Runyon v. Bd. of Trs. of Cal. State Univ.*,
48 Cal.4th 760 (2010) .................................................................... 31

*Rymer v. Hagler*,
211 Cal.App.3d 1171 (1989) .......................................................... 34

*Samara v. Matar*,
5 Cal.5th 322 (2018) ................................................................ 32, 39

*Schwake v. Ariz. Bd. of Regents*,
967 F.3d 940 (9th Cir. 2020) .......... 40

*Skilstaf, Inc. v. CVS Caremark Corp.*,
669 F.3d 1005 (9th Cir. 2012) .......... 23

*Steckman v. Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir. 1998) .......... 65, 66

*Sutton v. Providence St. Joseph Med. Ctr.*,
192 F.3d 826 (9th Cir. 1999) .......... 56

*Taylor v. Sturgell*,
553 U.S. 880 (2008) .......... 38

*Textron Inc. v. Travelers Cas. & Sur. Co.*,
45 Cal.App.5th 733 (2020) .......... 50

*Thomas v. Stenberg*,
206 Cal.App.4th 654 (2012) .......... 50

*Thompson v. Crestbrook Ins. Co.*,
81 Cal.App.5th 115 (2022) .......... 50

*United States v. Utah Const. & Mining Co.*,
384 U.S. 394 (1966) .......... 33

*Wassmann v. S. Orange Cnty. Cmty. Coll. Dist.*,
24 Cal.App.5th 825 (2018) .......... 53

*Wawrzenski v. United Airlines, Inc.*,
106 Cal.App.5th 663 .......... 62

*Westlake Cmty. Hosp. v. Superior Court*,
17 Cal.3d 465 (1976) .......... 21, 24, 27, 28

*White v. City of Pasadena*,
671 F.3d 918 (9th Cir. 2012) .......... 31, 32, 33, 36, 37, 38

*Y.K.A. Indus., Inc. v. Redevelopment Agency of City of San Jose*,
174 Cal.App.4th 339 (2009) .......... 53

## Constitutions

United States Constitution, amend. XIV, § 1 ........................ 45, 55, 56, 57

## Statutes

28 U.S.C. § 1291 ........................ 4
28 U.S.C. § 1331 ........................ 3
28 U.S.C. § 1367(a) ........................ 3
28 U.S.C. § 1738 ........................ 30, 36, 37

42 U.S.C. § 1983 ........................ *passim*

California Civil Procedure Code § 1094.5 ........................ *passim*

California Civil Procedure Code § 1094.5(b)(West 2012) ........................ 54

## Rules

Fed. R. Civ. P. 12(b)(6) ........................ 23, 59
Fed. R. Civ. P. 15(a) ........................ 65

## Miscellaneous

Michael Asimow et al., Cal. Practice Guide: Administrative Law ¶ 3:3 (Rutter Group 2025) ........................ 47

# ANSWERING BRIEF

## INTRODUCTION

When a college student is expelled for assaulting a fellow student, and after litigating to the California Supreme Court the state courts conclude his expulsion was fair, is the student entitled to relitigate the issue in federal court? No. The district court properly granted the university's motion to dismiss.

Appellees the University of Southern California, its former Vice President of Student Affairs, Dr. Ainsley Carry, and former Title IX Coordinator, Gretchen Dahlinger Means (collectively, USC), expelled appellant Matthew Boermeester after conducting an investigation and determining that he violated USC's policy prohibiting intimate partner violence. USC has a zero-tolerance policy for domestic violence. The evidence, confirmed by video footage and Boermeester's own statements, showed that Boermeester grabbed his ex-girlfriend by the neck and pressed her against a concrete wall. Boermeester petitioned for a writ of administrative mandate in state court alleging that he was deprived of a fair process, USC improperly suspended him, there was no

substantial evidence supporting USC's ultimate decision to expel him, and the personnel who investigated and disciplined him were biased.

The trial court denied the petition, and the case went from the California Court of Appeal to the California Supreme Court, which held in USC's favor. The case then went back to the Court of Appeal on remand. The final decision of the state court confirmed the fairness of USC's process, the validity of the suspension and expulsion, that substantial evidence supported USC's determination that Boermeester violated its policy against intimate partner violence, that there was no bias, and that there was no state action that could support a due process claim.

After Boermeester filed his state court action, he filed this federal action alleging state common law, Title IX, and due process claims based on the same facts and issues resolved against him in state court. The district court dismissed his complaint on the grounds that it was barred by judicial exhaustion, issue preclusion, and failed to state a claim. This Court should affirm. Although Boermeester attempts to challenge whether USC and the state court reached the right decision, the primary question is whether Boermeester's claims are barred by

judicial exhaustion and issue preclusion. They are. USC's administrative findings are final and binding because they were confirmed in the state court proceedings.

This dispute has spanned eight years, two lawsuits, and multiple appeals, including a unanimous decision by the California Supreme Court in USC's favor. Boermeester has received his day in court and cannot plead a viable claim against USC. Enough is enough. Private universities like USC must be able to enforce the rules protecting their communities without facing the specter of nearly a decade of multijurisdictional litigation. And federal courts should not reexamine legal and factual issues fully litigated in state court. Any amendment would be futile.

## JURISDICTIONAL STATEMENT

The district court had original jurisdiction over Boermeester's federal claims under 28 U.S.C. § 1331 and supplemental jurisdiction over his state-law claims under 28 U.S.C. § 1367(a).

The district court entered judgment dismissing Boermeester's complaint on March 10, 2025. (ER-4.) Boermeester filed a timely notice

of appeal on April 7, 2025. (ER-236.) This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED

1. Did the district court correctly dismiss Boermeester's state law and Title IX claims for failure to exhaust his judicial remedies where Boermeester failed to successfully overturn USC's quasi-judicial decision against him in state court?

2. Did the district court correctly dismiss Boermeester's claims where issue preclusion bars him from relitigating issues resolved against him in state court?

3. Did the district court correctly dismiss Boermeester's 42 U.S.C. § 1983 and state-law claims where Boermeester failed to plead state action, breach, outrageous conduct, and where his disciplinary proceeding was fair?

## STATEMENT OF THE CASE[1]

### A. While drunk, USC student Matthew Boermeester grabs the neck of his ex-girlfriend, a fellow student, and presses her against a wall. Another student observes the altercation and reports it to USC, which opens an investigation.

USC students Matthew Boermeester and Jane Roe[2] dated for more than one year. (ER-182–83.) After breaking up, they continued spending time together and Boermeester regularly stayed the night at Roe's apartment. *Boermeester v. Carry*, 15 Cal.5th 72, 81 (2023).

Around midnight on January 21, 2017, Roe picked Boermeester up from a party because he was severely intoxicated and drove them to McDonald's. *Id.*; *see* ER-183. They returned to Roe's residence, where she parked her car in the garage. (ER-183.) While walking from the parking garage to Roe's residence, Boermeester "put one hand on" Roe's neck, (ER-183), and pushed her against a concrete wall, *Boermeester*, 15 Cal.5th at 81.

---

1 This brief cites the facts as alleged in the complaint and the facts that have preclusive effect based on state court finality.

2 Boermeester refers to Jane Roe by name. (*See* AOB 11.) Given the state court's confirmation that Roe is a victim of intimate partner violence, USC's policy is to refer to Roe pseudonymously to preserve her anonymity.

A fellow student saw the January 21 incident. (ER-184.) He told another student that he observed a "physical altercation" between Boermeester and Roe.[3] (ER-180.) That student reported the incident to a USC tennis coach, who reported it to USC's Title IX Office, which opened an investigation. (ER-184.)

USC's policy against student misconduct prohibited intimate partner violence. *Boermeester*, 15 Cal.5th at 80. The policy required USC to conduct a neutral investigation to evaluate whether a preponderance of the evidence overcame the presumption of nonresponsibility. *Id.* at 80–81.

### B. Roe initially confirms Boermeester's intimate partner violence but then recants after Boermeester is notified of the investigation. Boermeester admits to putting his hand on her neck.

USC's then Title IX Investigator, Lauren Elan Helsper, and USC's then Title IX Coordinator, Gretchen Dahlinger Means, interviewed Roe. (ER-181, 182, 185.) Roe explained that, on the night of the incident, Boermeester called her and asked her to pick him up from a party.

---

[3] The allegations in the complaint differ substantially from the state court's findings about the incident, which are discussed below. *See infra* Statement of the Case, Sections F–I.

*Boermeester*, 15 Cal.5th at 81. He was the drunkest she had ever seen him. *Id.* Roe had her dog with her, and when they arrived at her apartment and exited the car, Boermeester instructed her to drop her dog's leash. *Id.* Roe did not want to do so, so he grabbed the back of her hair hard and said "drop the fucking leash." *Id.* Roe said "No," and Boermeester grabbed her harder, causing her to drop the leash because it "hurt." *Id.* (citation modified).

Boermeester then grabbed the front of Roe's throat and neck, causing her to cough. *Id.* Boermeester laughed and let go of her neck, but then grabbed her by the neck again and pushed hard, forcing her head against the concrete wall. *Id.* Boermeester again let her go, but then grabbed her neck once more and again hit her head against the wall. *Id.* Roe told Helsper and Dahlinger Means that her head hurt from the impact. *Id.*

Roe also told Helsper and Dahlinger Means that she confronted Boermeester the next day. *Boermeester v. Carry*, 100 Cal.App.5th 383, 388 (2024). Boermeester told Roe that he would not feel bad if he hurt her because "it would have been 'brought on by' her." *Id.*

Roe also provided Helsper and Dahlinger Means with a detailed account of prior instances of physical violence perpetrated by Boermeester. *Boermeester*, 15 Cal.5th at 82. She described Boermeester as being "mean" and "always putting [her] down," and she read a list of demeaning things he had said to her within a 24-hour period, which she had catalogued on her phone. *Id.* Roe requested an avoidance-of-contact order as well as temporary emergency housing because Boermeester had a key to her house. *Boermeester*, 100 Cal.App.5th at 388.

USC served Boermeester with a notice of investigation, an avoidance-of-contact order directing him to stay away from Roe, and a notice of interim suspension. (ER-186.) Dahlinger Means informed him in writing that a report had been made indicating that he violated USC's policy prohibiting domestic violence. (ER-187.)

USC's Title IX investigator, Helsper, then interviewed Boermeester. (ER-190–91.) Boermeester admitted that he put his hand on Roe's neck, *Boermeester*, 100 Cal.App.5th at 389, but described this interaction with Roe as "playing around," *id.* at 388; ER-191.

Shortly after USC began its investigation, Roe recanted her initial complaint. *Boermeester*, 15 Cal.5th at 83. She was worried that

Boermeester might retaliate against her. *Id.* Roe said she did not want him to be angry with her, and she asked USC to lift the avoidance-of-contact order. *Id.*

In response to media reports, Roe tweeted that "[t]he report is false." *Id.* at 84.

Roe and Boermeester continued to see each other after Boermeester was suspended even though the no-contact order barred such visits. (*See* ER-187.)

### C. USC concludes that Boermeester violated its domestic violence policy and, after affording Boermeester multiple layers of review, expels him.

USC's policy afforded both Boermeester and Roe the opportunity to appear at separate in-person hearings, which gave them an opportunity to respond to the evidence. (ER-194.)

After considering all of the evidence, Helsper determined that Boermeester violated USC's policy by (1) committing domestic violence, and (2) continuing to contact Roe after USC directed him to avoid contact with her. (ER-194.) A three-member Misconduct Sanctioning Panel recommended expulsion. (ER-195.) Boermeester appealed to USC's three-member Appellate Panel, which denied his appeal but

recommended a two-year suspension. (ER-195–96.) USC's final decision-maker, Dr. Carry, reviewed the recommendation of the Title IX investigator and Appellate Panel and concluded that Boermeester should be expelled. (ER-196.)

### D. Boermeester petitions unsuccessfully for a writ of mandate in state court and appeals.

Following his expulsion, Boermeester petitioned for mandamus against USC and Dr. Carry in Los Angeles Superior Court. (ER-108–43, 197–98.) He sought to reverse his expulsion on the grounds that USC's disciplinary proceedings violated his California common law right to fair procedure, because (1) he was denied the ability to attend a live hearing at which he or his attorney could directly question and cross-examine Roe in real time and (2) the same university official acted as an investigator and a fact finder. (ER-121, 139, 141–42, 198.) He also argued that there was no substantial evidence supporting USC's decision, and that USC was biased against him. (ER-141, 198; *see* ER-131.)

The superior court denied the petition (ER 144, 198), and Boermeester appealed (ER-198).

### E. While Boermeester's state court appeal is pending, he files this federal action, which is stayed pending resolution of the state court proceedings.

Boermeester filed a lawsuit in federal court challenging the same disciplinary process. (ER-178.) Boermeester asserted negligence, intentional infliction of emotional distress (hereinafter, IIED), and due process causes of action against USC. (ER-178.) He also asserted causes of action for erroneous outcome and selective enforcement under Title IX, breach of contract, and promissory estoppel. (ER-178.)

Boermeester sought an order: "(i) reversing the outcome and findings regarding the charges filed against him; (ii) expunging his disciplinary record; (iii) removing any record of his expulsion from his education file and/or transcript; and (iv) permanently destroying any record of the third-party complaint." (ER-223.) He also sought damages on the ground that he was "subjected to a biased, prejudiced and inherently unfair process in violation of Title IX." (ER-211–12.)

The district court stayed Boermeester's federal action pending resolution of the state court proceedings. (ER-7.)

### F. The California Court of Appeal reverses in a divided decision. The California Supreme Court grants review.

On appeal from the superior court's judgment, Boermeester claimed: (1) he was denied notice of the allegations against him; (2) the interim measure of suspension while the investigation continued was improperly imposed; (3) USC's investigatory model violated his rights under the common law fair procedure doctrine; (4) USC's failure to hold a live hearing with witness cross-examination violated the fair procedure doctrine; (5) USC's appellate review system was insufficient; (6) USC's Title IX office was biased against him; and (7) USC's findings are not supported by substantial evidence. (*See* MJN 37–63 (COA AOB 37–63).)

As to the first two issues, the majority found Boermeester's contentions "meritless." *Boermeester v. Carry*, 263 Cal.Rptr.3d 261, 271 (2020), *rev'd,* 15 Cal.5th 72 (2023). The court concluded that Boermeester received sufficient notice of the allegations against him and that USC's interim suspension was proper given the severity of Boermeester's misconduct. *Id.* at 271–72, 274.

Based on the administrative record, the court found that Boermeester pulled Roe's hair, pushed her against a wall, and put his hand on her neck. *Id.* at 274. The court also found that during Roe's initial interview with the Title IX office, Roe confirmed that Boermeester grabbed her "tight" by the neck and pushed her "hard" against a concrete wall, which made her head "hurt." *Id.* at 266. At that interview, Roe acknowledged she was "in a 'bad situation' but was conflicted about what to do because she still cared for Boermeester." *Id.* She requested an avoidance-of-contact order prohibiting Boermeester from contacting her, as well as temporary emergency housing because Boermeester had a key to her house. *Id.* Roe later recanted her initial complaint. *Id.* at 267. She was worried that Boermeester might retaliate against her. *Id.* Roe said she did not want him to be angry with her, and she asked USC to lift the avoidance-of-contact order. *Id.*

The court found that eyewitness testimony and surveillance footage of the incident corroborated Roe's initial account that Boermeester grabbed and pushed her. *Id.* at 270, 274. After downplaying what he saw, one eyewitness told Helsper that he saw Boermeester push Roe against the wall and put his hands around her

neck and that he heard Roe make "gagging" sounds. *Id.* at 268–69. Another eyewitness observed Boermeester pinning Roe against the wall. *Id.* at 269. The court also noted that Helsper interviewed Roe's friends and Boermeester. *Id.* Roe's friends confirmed that Roe and Boermeester had a volatile relationship, *id.*, and Boermeester admitted he put his hand on Roe's neck while she was against a wall, *id.* at 274.

As to Boermeester's claim that USC's Title IX office was biased against him, the majority found that Boermeester failed to meet his burden on appeal to demonstrate prejudicial error. *Id.* at 271 n.6. As to the live cross-examination issue, the majority agreed with Boermeester that the lack of an opportunity to cross-examine witnesses at a live hearing deprived him of a fair process, and on that basis reversed the superior court's judgment. *Id.* at 274. Because the majority found the live cross-examination issue dispositive, it declined to "address whether USC's policy was also unfair because the Title IX investigator held the dual roles of investigator and adjudicator." *Id.* at 271. The court also declined to "address Boermeester's other claims of error, including whether substantial evidence supported USC's findings." *Id.*

USC petitioned for review by the California Supreme Court. The California Supreme Court granted review and ordered immediate depublication of the Court of Appeal's opinion so that it could not be cited as precedent in the meantime. *Boermeester v. Carry*, 472 P.3d 1062 (Cal. 2020).

### G. The California Supreme Court sides with USC that its process was fair, reverses, and remands.

The California Supreme Court held that a university's internal disciplinary proceedings are treated as administrative proceedings under state law and thus must comport with the common law fair procedure requirement. *Boermeester*, 15 Cal.5th at 86. The Court reiterated that the common law fair procedure requirement "does not compel formal proceedings with all the embellishments of a court trial [citation], nor adherence to a single mode of process. It may be satisfied by any one of a variety of procedures which afford a fair opportunity for an applicant to present his position." *Id.* at 90 (quoting *Pinsker v. Pac. Coast Soc'y of Orthodontists*, 12 Cal.3d 541, 555 (1974)).

And, the court explained, "courts 'should not attempt to fix a rigid procedure that must invariably be observed. Instead, the associations themselves should retain the initial and primary responsibility for

devising a method which provides an applicant adequate notice of the "charges" against him [or her] and a reasonable opportunity to respond."' *Id.* (quoting *Pinsker*, 12 Cal.3d at 555). The court concluded that the fair procedure doctrine "requires [the Court] to give private universities primary responsibility for crafting the precise procedures meant to afford a student with notice and an opportunity to respond." *Id.* Ultimately, "[p]rivate universities generally know best how to manage their own operations, and requiring a fixed set of procedures they must utilize in every situation when determining student discipline would constitute an improper '"intrusion into the[ir] internal affairs."'" *Id.* (quoting *Pinsker*, 12 Cal.3d at 557).

Turning its focus to the university setting, the Court explained that it is "appropriate to give private universities broad discretion in formulating their disciplinary processes." *Id.* at 93. This ensures that private universities "not only provide the accused student a meaningful opportunity to be heard, but also embolden victims to report incidents of sexual misconduct or intimate partner violence, encourage witnesses to participate in the disciplinary process, and allow the private university

to conserve its resources so that it can remain focused on its primary mission of providing a postsecondary education." *Id.*

Finally, in reversing the Court of Appeal, the Supreme Court held that USC's proceedings satisfied the basic requirements of fair procedure and that USC was "not required to have gone further by conducting a live hearing with Boermeester in attendance and with Boermeester directly or indirectly cross-examining the witnesses and asking follow-up questions, either in person or virtually." *Id.* 94–95. The court explained that "this is not a case in which the accused student was given *no* hearing at all." *Id.* at 96. Rather, "USC's policies provided separate and individual evidence hearings for both Boermeester and Roe" and "USC complied with its policies by offering the parties the opportunity to attend their separate evidence hearings." *Id.* "Although Boermeester could not have cross-examined Roe or the third party witnesses in real time at his hearing, he could have responded to the evidence and presented his defense before USC's adjudicators had he chosen to attend his hearing." *Id.*

The California Supreme Court remanded for the state Court of Appeal to address in the first instance the remaining claims that

Boermeester raised on appeal that the Court of Appeal expressly declined to reach before. *Id.* at 98.

### H. On remand, the Court of Appeal affirms the denial of Boermeester's petition, finding substantial evidence supports USC's decision with no denial of fair process.

On remand, the Court of Appeal affirmed the denial of Boermeester's writ petition, holding that substantial evidence supported USC's decision that Boermeester violated its intimate partner violence policy. *Boermeester*, 100 Cal.App.5th at 387. The court explained there was evidence that Boermeester harmed Roe: she "stated that it hurt when Boermeester grabbed her hair and when he hit her head against the wall. He pushed on her neck hard enough to make her cough." *Id.* at 395. The court found there was "nothing questionable" about choosing to find a victim's initial statement more credible than a latter recantation of that statement, particularly in domestic violence cases. *Id.* at 397. The court noted that three courts have viewed the security video and "all have found it consistent with Roe's initial oral account." *Id.* The court also noted that Roe's initial statement was corroborated by eyewitness statements and Boermeester's admission that he had his hands on Roe's neck. *Id.* at 398.

The court also found no denial of fair process in USC's use of a Title IX investigator with dual roles of investigator and adjudicator and in USC's internal appeals process. *Id.* at 387, 393.

Finally, the court declined to revisit Boermeester's argument that USC was biased against him and repeated its conclusion from the first appeal. *See id.* at 403 n.9.

### I. After the conclusion of the state court proceedings, USC moves to dismiss Boermeester's federal complaint. The district court grants the motion, and Boermeester appeals.

The district court lifted its stay once the state court proceedings had ended. (ER-7.) USC then moved to dismiss Boermeester's federal complaint. (ER-58.) USC argued Boermeester's federal action is barred by the doctrine of judicial exhaustion because he failed to overturn USC's decision in a mandamus action before suing for damages. (ER-70–72.) USC also argued that all of Boermeester's claims are barred by issue preclusion because they are premised on theories the California courts rejected (i.e., that USC's investigation and decisions to suspend and expel Boermeester were unfair and erroneous). (ER-64–65.) Finally, it argued Boermeester failed to state a claim for breach of contract,

promissory estoppel, negligence, IIED, and violation of procedural due process. (ER-65.)

The district court granted USC's motion to dismiss on several grounds and dismissed Boermeester's federal complaint with prejudice. (ER-5–21.) First, the court concluded that Boermeester's claims are barred by the judicial exhaustion doctrine because he failed to challenge *successfully* USC's decision in a mandamus action before suing for damages. (ER-13.) Second, the court concluded that Boermeester's claims are barred by issue preclusion because the state court rulings preclude him from establishing an essential element of each of his claims. (ER-15.) Finally, the court concluded that Boermeester's complaint failed to state a claim. (*See* ER-15.)[4]

The district court entered judgment for USC. (ER-4.) Boermeester timely appealed. (ER-236.)

---

[4] The district court also concluded that the *Rooker-Feldman* doctrine bars Boermeester's claim. (ER-10.) But given Boermeester's concession that he is not challenging the state court proceedings in federal court (AOB 32), the *Rooker-Feldman* doctrine does not apply.

## SUMMARY OF THE ARGUMENT

Boermeester failed to exhaust his judicial remedies, barring his Title IX and state-law claims. To exhaust judicial remedies, a person aggrieved by a quasi-judicial administrative decision like a university disciplinary proceeding must *successfully* challenge the decision in a mandamus action before suing for damages. *See Westlake Cmty. Hosp. v. Superior Court*, 17 Cal.3d 465, 469, 484 (1976). Because Boermeester failed to set aside USC's adverse administrative findings in his state court mandamus proceeding, those findings are final and defeat his claims.

Boermeester's claims also fail because issue preclusion bars him from relitigating issues decided against him in his USC proceeding and in state court. The state court decisions upholding USC's decision have preclusive effect because the disciplinary proceeding was sufficiently judicial, applying issue preclusion does not contravene Title IX and § 1983's legislative intent, and the threshold elements of issue preclusion are satisfied. Stripped of the matters decided against him in his administrative proceeding and in state court, Boermeester cannot state any of his claims.

Boermeester's § 1983 and state-law claims also fail on the merits. Boermeester fails to state a claim under § 1983 because a private university's student disciplinary investigation is not state action. *See Heineke v. Santa Clara Univ.*, 965 F.3d 1009, 1014 (9th Cir. 2020). He fails to state a claim for breach of contract and promissory estoppel because his disciplinary proceeding was fair and he does not identify a specific contractual promise breached by USC. Boermeester's state-law negligence claim fails because it is a relabeled version of the common law fair procedure claim that he lost in state court. It fails on the merits for the same reasons it failed in state court—USC's procedure was fair, affording Boermeester notice of the charges against him and an opportunity to respond. Boermeester also fails to state a claim for IIED because disciplining a student credibly accused of committing intimate partner violence is not outrageous conduct.

Finally, the district court correctly denied leave to amend because amendment would be futile.

## STANDARD OF REVIEW

This Court reviews a district court's dismissal of an action de novo, whether the dismissal is based on judicial exhaustion, issue

preclusion, or failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See Love v. Villacana*, 73 F.4th 751, 754 (9th Cir. 2023) (issue preclusion); *Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1141 (9th Cir. 2021) (failure to state a claim); *Doe v. Regents of the Univ. of California*, 891 F.3d 1147, 1152 (9th Cir. 2018) (judicial exhaustion). A court may take judicial notice of the existence of prior legal proceedings when assessing a Rule 12(b)(6) motion. *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016 n.9 (9th Cir. 2012); *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).

While the denial of leave to amend is reviewed for an abuse of discretion, this Court reviews the question of futility of amendment de novo. *See Cohen v. ConAgra Brands, Inc.*, 16 F.4th 1283, 1287 (9th Cir. 2021).

This Court may affirm the dismissal on any basis supported by the record, even if the district court relied on different grounds or reasoning. *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001).

# ARGUMENT

## I. Boermeester failed to exhaust his judicial remedies, barring his Title IX and state-law claims.

### A. A person aggrieved by a quasi-judicial administrative decision, including a university disciplinary proceeding, must *successfully* challenge the decision in a mandamus action before suing for damages.

Under California's doctrine of judicial exhaustion, if a party loses in an administrative proceeding and fails to overturn the decision in a mandamus action, the findings from the administrative proceeding become final and cannot be challenged in a subsequent judicial action. *See Westlake*, 17 Cal.3d at 484; *Johnson v. City of Loma Linda*, 24 Cal.4th 61, 70 (2000).

In *Westlake*, the California Supreme Court held that before a doctor could bring a tort action against a hospital for a decision made through a quasi-judicial proceeding, he "must first *succeed* in overturning the quasi-judicial" decision in a mandamus action. *Westlake*, 17 Cal.3d at 484 (emphasis added); *Miller v. Cnty. of Santa Cruz*, 39 F.3d 1030, 1036 (9th Cir. 1994) (recognizing *Westlake* "held that a plaintiff must first succeed in overturning the quasi-judicial action before filing suit").

The judicial exhaustion requirement serves several policy and institutional interests. It preserves the integrity and finality of the state court's judicial review process and prevents federal courts from functioning as de facto appellate bodies reviewing state administrative decisions. *See Miller*, 39 F.3d at 1037–38 (recognizing need for federal courts to respect final state administrative decisions that were judicially reviewable). Permitting a plaintiff to collaterally attack a state court reviewed administrative decision in a subsequent action would erode the authority of both the administrative body and the reviewing court. By requiring the aggrieved party to first *succeed* in obtaining mandamus relief before pursuing damages, the exhaustion rule ensures that any civil claim rests on a valid predicate (i.e., that the underlying administrative proceeding was legally defective). By contrast, an *unsuccessful* party's damages claim would merely relitigate matters that were, or could have been, resolved in the quasi-administrative and mandamus proceeding.

The judicial exhaustion requirement also conserves judicial resources and reinforces orderly interaction between agencies and courts and between state and federal courts. It ensures that challenges

to the validity of an administrative decision first proceed through the proper channel—review under California Civil Procedure Code section 1094.5—not civil damages actions. This sequence prevents piecemeal litigation, which conserves judicial resources and ensures smooth interactions between quasi-administrative agencies and courts and state and federal courts.

The judicial exhaustion rule applies whenever an administrative body makes a quasi-judicial decision to terminate or otherwise adversely affect the interests of a member or employee—as long as the administrative body offers fair procedure (measured by California's common law doctrine of fair procedure) to review the decision. *See Knickerbocker v. City of Stockton*, 199 Cal.App.3d 235 (1988) (discharged police officer); *City of Fresno v. Superior Court*, 188 Cal.App.3d 1484 (1987) (terminated park supervisor); *Logan v. S. Cal. Rapid Transit Dist.*, 136 Cal.App.3d 116 (1982) (discharged bus driver); *Interior Sys., Inc. v. Del. E. Webb Corp.*, 121 Cal.App.3d 312 (1981) (discharged construction subcontractor); *Holder v. California Paralyzed Veterans Ass'n*, 114 Cal.App.3d 155 (1980) (expulsion from private membership in veterans association); *see also Rojo v. Kliger*, 52 Cal.3d

65, 86 (1990) (listing different contexts in which *Westlake* has been applied).

Student discplinary proceedings like USC's are quasi-judicial and therefore subject to the judicial exhaustion doctrine. *See Westlake*, 17 Cal.3d at 478; *Boermeester*, 15 Cal.5th at 86 (concluding USC's student disciplinary proceedings are quasi-judicial). Although Boermeester challenges the adequacy of his disciplinary proceeding, he does not dispute that he knew the nature of the allegations against him and had an opportunity to respond. (*See* AOB 38–42.) Nor can he, because the California Court of Appeal found that he received notice of the allegations against him and had a meaningful opportunity to respond to them. *See Boermeester*, 263 Cal.Rptr.3d at 272 ("Boermeester was not only provided notice of the factual basis of the allegations against him, he was also provided with a meaningful opportunity to respond to them.").

### B. Boermeester's state-law and Title IX claims are barred as a matter of law because he did not succeed in overturning USC's quasi-judicial decision.

The judicial exhaustion doctrine bars Boermeester's state-law and Title IX causes of action[5] for two reasons.

First, the judicial exhaustion doctrine applies to alleged procedural, as well as alleged substantive, defects in a disciplinary proceeding. *See Holder*, 114 Cal.App.3d at 164 ("Plaintiff, of course, claims that the hearing procedure was so defective as to deny him fundamental due process, but such a procedural defect is a common ground for issuance of a writ of mandate invalidating a quasi-judicial decision. . . . Plaintiff's pleading of procedural defects denying fundamental due process does not, therefore, take the case out of the operation of *Westlake*."). Thus, Boermeester's claim that he was entitled to different or more elaborate procedures during his discplinary proceeding is subject to the *Westlake* requirement that he obtain a writ of mandate on that basis before suing for damages.

[5] The judicial exhaustion doctrine does not apply to Boermeester's § 1983 claim. *Jamgotchian v. Ferraro*, 93 F.4th 1150, 1159 (9th Cir. 2024). That claim fails for other reasons explained below.

Second, application of the judicial exhaustion rule is not limited to tort claims. It applies to "all cases where a quasi-judicial decision is the basis of a cause of action," *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 651 (9th Cir. 1988), including tort, contract, and Title IX claims. *See Doe*, 891 F.3d at 1154–55 (holding plaintiff's Title IX claim was barred because plaintiff failed to exhaust judicial remedies); *Mir*, 844 F.2d at 651 ("The principle announced in *Westlake* is not limited to cases that sound in tort."); *Logan,* 136 Cal.App.3d at 123 ("[A]ny cause of action that involves the substance of [a] hearing . . . whether such cause of action sounds in tort or contract, must be tested under a section 1094.5 writ.").

Boermeester's Title IX and state-law claims seek to recover damages resulting from USC's investigation, disciplinary process, and decision againt him and are based on allegations that USC misused the disciplinary process to harm him. (*See, e.g.*, ER-179–81, 185–87, 193, 195–96, 199, 202–03, 205–07, 211–13.) Because USC's adverse administrative findings were not set aside through a petition for writ of mandamus, they are final and binding. Any other result would permit a retrial of the same facts and issues and expose defendants to possibly

inconsistent rulings in different forums. *See Knickerbocker*, 199 Cal.App.3d at 243. It would also "render the administrative hearing a meaningless and idle act if it were to be accorded no import." *Id.* Finally, it would squander eight years of judicial and party resources invested in this case.

## II. All of Boermeester's claims fail because issue preclusion bars him from relitigating issues resolved against him in state court.

### A. A state court decision upholding an administrative decision has preclusive effect if the administrative proceeding was sufficiently judicial, it does not contravene legislative intent, and the threshold elements of issue preclusion are satisfied.

Federal courts "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 81 (1984); 28 U.S.C. § 1738. The same rule applies to administrative proceedings that state courts have upheld. *Clements v. Airport Auth. of Washoe Cnty.,* 69 F.3d 321, 326–27 (9th Cir. 1995).

"In determining the preclusive effect of a [California] administrative decision or a state court judgment," federal courts thus

follow California's preclusion rules. *White v. City of Pasadena*, 671 F.3d 918, 926 (9th Cir. 2012); *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 482 (1982). This Court has held that California law governs even if the state-court action challenged "administrative decisions under section 1094.5, California's administrative mandamus statute," *White,* 671 F.3d at 926, and "the federal court action alleges a constitutional violation," *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 760 (9th Cir. 2014). This rule is fair and sensible because it promotes comity between state and federal courts by ensuring that federal courts give proper respect to final state court judgments upholding administrative decisions. *See supra* pp. 25–26.

Under California law, a prior administrative proceeding, if upheld by courts on review (or not reviewed at all), is binding in later civil actions if (1) "the administrative proceeding possessed the requisite judicial character," (2) affording preclusive effect to the administrative decision does not contravene the intent of the Legislature, and (3) the threshold requirements for issue preclusion[6] are satisfied. *Runyon v.*

---

[6] This brief uses the same terminology as the California Supreme Court and refers to "claim preclusion" rather than "res judicata" and

*Bd. of Trs. of Cal. State Univ.*, 48 Cal.4th 760, 773–74 (2010); *see Murray v. Alaska Airlines, Inc.*, 50 Cal.4th 860, 867 (2010); *accord White,* 671 F.3d at 927.

### B. USC's disciplinary proceeding was sufficiently judicial.

An administrative proceeding has the requisite judicial character for issue preclusion to apply if the administrative agency acts in a judicial or quasi-judicial capacity and resolves "*disputed issues of fact* properly before it which the parties have had an *adequate opportunity to litigate*." *People v. Sims*, 32 Cal.3d 468, 479 (1982), *superseded by statute on another ground as stated in Gikas v. Zolin*, 6 Cal.4th 841, 851 (1993).

Indicia of proceedings undertaken in a judicial capacity include "a hearing before an impartial decision maker; testimony given under oath or affirmation; a party's ability to subpoena, call, examine, and cross-examine witnesses, to introduce documentary evidence, and to make oral and written argument; the taking of a record of the proceeding; and

---

"issue preclusion" in place of "collateral estoppel." *Samara v. Matar*, 5 Cal.5th 322, 326 (2018).

a written statement of reasons for the decision."[7] *Pacific Lumber Co. v. State Water Res. Control Bd.*, 37 Cal.4th 921, 944 (2006); *see White*, 671 F.3d at 927–28 (discussing factors).

Boermeester's administrative proceeding possessed most of the indicia of judicial character identified in *Pacific Lumber*. As noted by the California Supreme Court, "USC provided Boermeester notice of the allegations; the opportunity to provide his version of events in his interview with the Title IX investigator; the opportunity to independently review the testimonial and documentary evidence with his attorney-advisor; the opportunity to submit his own evidence and the names of potential witnesses to the Title IX investigator; the opportunity to respond to the testimonial and documentary evidence through an in-person evidence hearing held at the Title IX office and conducted by the Title IX coordinator (which he declined to attend in

[7] California's "judicial character" test is substantially the same as the U.S. Supreme Court's test for determining whether a federal court should give an unreviewed state administrative proceeding preclusive effect under federal common law. *See United States v. Utah Const. & Mining Co.*, 384 U.S. 394, 422 (1966), *superseded by statute on another ground as stated in Alliant Techsystems, Inc. v. United States,* 186 F.3d 1379, 1380 (Fed. Cir. 1999); *see also Eilrich v. Remas*, 839 F.2d 630, 633 n.1 (9th Cir. 1988) ("[B]ecause California law incorporates the *Utah Construction* standard, no scrutiny beyond California law is necessary.").

favor of submitting a written response to the evidence); the opportunity to submit questions for the Title IX coordinator to ask Roe at her own evidence hearing (which he declined to do); and the opportunity to appeal the misconduct sanctioning panel's decision to the appellate panel."[8] *Id.* at 94. Judicial review was also available under section 1094.5, and Boermeester pursued it. *Id.* at 79.

Boermeester argues USC's disciplinary process did not possess sufficient judicial character because there was "no hearing, no testimony, no confrontation, and no ability to present evidence through traditional adversarial means." (AOB 40.) But California courts recognize that "[i]t is the *opportunity to litigate* that is important in these cases, not whether the litigant availed himself or herself of the opportunity." *Murray*, 50 Cal.4th at 869 (emphasis added) (quoting *Rymer v. Hagler*, 211 Cal.App.3d 1171, 1179 (1989)).

Boermeester had the opportunity to attend his hearing in person, but he declined to do so. *See Boermeester*, 15 Cal.5th at 94–95. He also

[8] The court concluded that "USC was not required to have gone further by conducting a live hearing with Boermeester in attendance and with Boermeester directly or indirectly cross-examining the witnesses and asking follow-up questions, either in person or virtually." *Boermeester*, 15 Cal.5th at 95.

had the opportunity to submit questions in advance for USC's Title IX Coordinator to ask Roe. *Id.* But he did not do that either, nor did he request live cross-examination or any similar relief while his USC proceedings were ongoing. *See id.*

Boermeester suggests that USC's disciplinary proceeding must possess *all* the indicia of judicial character identified in *Pacific Lumber* for issue preclusion to apply. (*See* AOB 40.) But the *Pacific Lumber* test is a factors test, not an elements test. And "California precedent makes clear that an administrative hearing, to qualify as sufficiently 'judicial' for collateral estoppel purposes, need not be identical to a judicial trial, so long as basic due process considerations are satisfied." *Basurto v. Imperial Irrigation Dist.*, 211 Cal.App.4th 866, 884 (2012). As the California Supreme Court unanimously held, USC's proceedings satisfied these basic requirements. *See Boermeester*, 15 Cal.5th at 94–95.

### C. Affording preclusive effect here does not contravene the Legislature's intent.

Boermeester argues that affording preclusive effect to USC's disciplinary decision and the state court's judgment is contrary to Congress's intent. (AOB 41.) He asserts, without citing any authority,

that Title IX and § 1983 claims "arise under distinct legal frameworks" and that issue preclusion would "subvert those federal protections." (AOB 41.) He is wrong.

This Court has held that the "rules of claim and issue preclusion apply equally to § 1983 actions in federal court." *White*, 671 F.3d at 927. This Court explained that "[n]othing in § 1983 'expresses any congressional intent to contravene the common-law rules of preclusion or to repeal the express statutory requirements of the predecessor of 28 U.S.C. § 1738.'" *White*, 671 F.3d at 927 (quoting *Allen v. McCurry*, 449 U.S. 90, 98 (1980)).

Nothing in Title IX's legislative history suggests that Congress considered it necessary or desirable to provide an absolute right to relitigate in federal court an issue resolved by a state court upholding an administrative decision. *See* AOB 42–49; *Jamgotchian*, 93 F.4th at 1154 ("Although Congress may direct otherwise (and has done so for some statutes), Congress 'presumptively intends' state agency determinations to have preclusive effect in federal court.").

In the analogous context of Title VII, the U.S. Supreme Court held that nothing in the legislative history expresses or implies an intent to

contravene preclusion rules or 28 U.S.C. § 1738. *Kremer*, 456 U.S. at 473. This Court has looked to Title VII in interpreting Title IX and has noted that Title IX's legislative history "strongly suggests that Congress meant for similar substantive standards to apply under Title IX as had been developed under Title VII." *Grabowski v. Arizona Bd. of Regents*, 69 F.4th 1110, 1116 (9th Cir. 2023) (quoting *Emeldi v. Univ. of Oregon*, 698 F.3d 715, 724 (9th Cir. 2012)); *see Grabowski,* 69 F.4th at 1116 ("'[W]e construe Title IX's protections consistently with those of Title VII' when considering a Title IX discrimination claim." (quoting *Doe v. Snyder*, 28 F.4th 103, 114 (9th Cir. 2022))). The applicability of preclusion rules in Title VII cases supports their applicability in Title IX cases too.

In sum, state-court-reviewed administrative decisions are entitled to the same preclusive effect in Title IX and § 1983 actions as in any other action. *See White*, 671 F.3d at 927; *see also Eilrich*, 839 F.2d at 632 (noting federal courts must give preclusive effect to state court reviewed administrative determinations).

## D. The threshold elements of issue preclusion are satisfied.

### 1. The threshold elements of issue preclusion

Issue preclusion "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *White*, 671 F.3d at 926 (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)). "By 'preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate,'" issue preclusion protects "against 'the expense and vexation attending multiple lawsuits, conserv[es] judicial resources, and foste[rs] reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Taylor*, 553 U.S. at 892 (quoting *Montana v. United States,* 440 U.S. 147, 153–54 (1979)).

The threshold requirements for issue preclusion are satisfied when the issue sought to be precluded is (1) "identical to that decided in a former proceeding"; (2) was "actually litigated in the former proceeding"; (3) was "necessarily decided in the former proceeding"; (4) the decision in the former proceeding is "final and on the merits"; (5) the party against whom preclusion is sought is "the same as, or in privity

with, the party to the former proceeding"; and (6) applying issue preclusion is consistent with preserving the integrity of the judicial system, promoting judicial economy, and protecting litigants from harassment by vexatious litigation. *Lucido v. Superior Court*, 51 Cal.3d 335, 341–43 (1990); *see Samara*, 5 Cal.5th at 327.

An issue is "actually litigated" in a prior proceeding if it was "properly raised, submitted for determination, and determined in that proceeding." *Hernandez v. City of Pomona*, 46 Cal.4th 501, 511 (2009). ""The "identical issue" requirement addresses whether "identical factual allegations" are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same."" *Id.* at 511–12 (quoting *Lucido*, 51 Cal.3d at 342).

Here, it is undisputed that USC's disciplinary decision and the state court decision on Boermeester's mandamus petition are final and on the merits and that Boermeester was a party to both his disciplinary and state court proceedings. (*See* AOB 42–46.) It is also undisputed that applying issue preclusion here is consistent with preserving the integrity of the judicial system, promoting judicial economy, and protecting litigants from harassment by vexatious litigation. (*See* AOB

42–46.) Thus, three of the threshold elements for issue preclusion are met. As explained below, the remaining elements of issue preclusion are satisfied as well.

#### 2. Boermeester's Title IX causes of action fail because he is precluded from relitigating that USC's disciplinary process was unfair and biased.

Boermeester's first and second causes of action allege violations of Title IX for erroneous outcome and selective enforcement. (ER-203, 212.) To state a claim under Title IX, Boermeester must allege facts that, if true, raise a plausible inference that USC discriminated against him "on the basis of sex." *Schwake v. Ariz. Bd. of Regents*, 967 F.3d 940, 946 (9th Cir. 2020); *accord Doe v. Regents of Univ. of Cal.*, 23 F.4th 930, 935 (9th Cir. 2022). To raise a plausible inference of discrimination, Boermeester must allege specific instances of bias in his disciplinary proceeding. *Doe*, 23 F.4th at 939.

Boermeester's Title IX claim is based on allegations that USC's Title IX process was flawed and unfair. (*See* ER-205–213.) He alleges USC improperly (a) suspended him (ER-206), (b) considered him the perpetrator and Roe the "battered woman" (ER-199, 206), (c) assessed the evidence (ER-206–07), (d) conducted an unfair investigation (ER-

201–203, 205–07), and (e) retained personnel who were biased against him (ER 199–201).

Boermeester made the same arguments in his state-court mandamus petition (*see generally* ER-134–41), and the Court of Appeal rejected them. The Court of Appeal concluded that Boermeester's interim suspension was proper and that USC provided a fair process prior to expelling him, including notice and an opportunity to be heard (although Boermeester elected to submit a written statement rather than participate in his evidentiary hearing). *See Boermeester*, 263 Cal.Rptr.3d at 271 ("Boermeester contends he was denied notice of the allegations against him and that interim measures were improperly imposed. We find these contentions meritless."); *Boermeester*, 100 Cal.App.5th at 400, 404 (rejecting Boermeester's claims that USC's Title IX investigator and adjudicator acted unfairly and concluding USC's adjudicatory process was adequate).

The court concluded that USC provided adequate notice to Boermeester because it (a) informed him that it was investigating a report that he committed intimate partner violence by "grabbing Roe by the neck, and pushing her head into a cinder block wall multiple times

on/or about January 21, 2017"; and (b) then later notified him of a second policy violation for "contacting and communicating with Roe via text, phone call, social media, and in-person since the issuance of the Avoidance of Contact Order." *Boermeester*, 263 Cal.Rptr.3d at 272 (citation modified). The court noted that Boermeester's written statements denying that he engaged in intimate partner violence and violated the avoidance-of-contact order belied his contention that he did not receive adequate notice of the allegations. *Id.*

The Court of Appeal also rejected Boermeester's claims of bias. *See Boermeester*, 263 Cal.Rptr.3d at 271 n.6 ("To the extent Boermeester argues USC's Title IX office was biased against him, an argument that appears throughout his appellate briefs, he has presented no legal or factual basis to support this argument other than to say its decisions were not in his favor. Boermeester has failed to meet his burden to demonstrate prejudicial error in this regard."); *Boermeester*, 100 Cal.App.5th at 403 n.9 ("We note Boermeester also claims the investigator 'disregarded the parties' own written submissions entirely, except to bolster her own unsupported opinion that Roe is a victim of

domestic violence.' This is simply a claim that the investigator was biased against him. We rejected that claim in our first opinion.").

Because the fairness of USC's disciplinary process and its purported bias were "actually litigated" and "necessarily decided" in state court, Boermeester cannot relitigate those issues. *Lucido*, 51 Cal.3d at 341–42.

Stripped of the matters decided in state court, Boermeester is left with allegations that USC was under external pressure to pursue complaints of sexual misconduct (*see* ER-207–11) and that Dahlinger Means and other USC personnel prejudged Boermeester and treated him unfairly because he was a football player (*see* ER-206). But these allegations do not raise a plausible inference that USC discriminated against him on the basis of sex.

In *Doe*, 23 F.4th at 941, this Court held that a suspended university student's allegations of "external pressures" on a university regarding its handling of sexual misconduct complaints *combined* with allegations of an "internal pattern and practice of bias and of specific instances of bias in [the student's] disciplinary proceedings," gave rise to a plausible inference that the university discriminated against the

student on the basis of sex. The Court explained that allegations of "external pressure" *alone* might not survive a motion to dismiss a Title IX claim because they are "largely of general applicability to any federally-funded university." *Id.* at 937. The Court reasoned that allegations of external pressure merely "provide[ ] a backdrop that, when combined with other circumstantial evidence of bias in [a] specific proceeding" give rise to a plausible Title IX claim. *Id.* (quoting *Doe v. Purdue Univ.*, 928 F.3d 652, 669 (7th Cir. 2019)).

Boermeester's allegation of external pressure without more—e.g., allegations of an internal pattern and practice of bias *and* specific instances of bias in his disciplinary proceeding—is insufficient to state a Title IX claim under *Doe*, 23 F.4th at 937–38. Boermeester's allegation that he was treated differently because he is a football player is also insufficient to state a Title IX claim. It does not reference gender. And Boermeester's complaint fails to connect how this allegation could give rise to a plausible inference of bias in his disciplinary proceeding. *See, e.g.*, *id.* at 938 ("[M]aking arguably feminist statements . . . is not alone sufficient to support a reasonable inference that an individual is biased against men.").

In sum, Boermeester's Title IX claim fails because Boermeester is precluded from relitigating that USC's disciplinary process was unfair and that it was biased against him.

#### 3. Boermeester's § 1983 claim fails because he is precluded from relitigating the California Supreme Court's finding that there was no state action. The finding was correct in any event.

Section 1983 and the Due Process Clause apply only to state action. *See, e.g.*, U.S. Const. amend. XIV, § 1; *Rendell-Baker v. Kohn*, 457 U.S. 830, 837 (1982) (noting that the Fourteenth Amendment, "which guarantees due process, applies to acts of the states, not to acts of private persons or entities").

Boermeester raised a due process challenge in his state court mandamus petition. (ER-139, 141; *see* ER-145 (acknowledging that Boermeester asserted "the process leading to his expulsion violated his right to due process").) The California Supreme Court found that USC, a private institution, was not engaged in state action and that the Due Process Clause "does not apply here since no state action is involved." *Boermeester*, 15 Cal.5th at 87. Boermeester is precluded from relitigating the finding that there was no state action because the issue is "identical" to the issue resolved in state court and was "actually

litigated" and "necessarily decided" in state court. *Lucido*, 51 Cal.3d at 341; *see Eilrich*, 839 F.2d at 633 n.2 (recognizing that courts apply issue preclusion to both issues of fact and issues of law decided in an administrative proceeding).

Boermeester argues that "the issue of whether USC acted under color of state law for purposes of 42 U.S.C. § 1983 was not litigated" or "decided" because the Supreme Court addressed the issue in the context of rejecting a *state* due process argument under its common law fair procedure doctrine. (AOB 57.) This argument fails for three reasons. First, § 1983's "color of law" requirement is "treated as the equivalent of the 'state action' requirement under the Constitution." *Jensen v. Lane Cnty.*, 222 F.3d 570, 574 (9th Cir. 2000). And the California Supreme Court resolved the state action question against Boermeester. *See Boermeester*, 15 Cal.5th at 87.

Second, Boermeester's state court petition does not specify that he was asserting a state due process argument rather than a federal due process argument. (ER-139, 141.) And the California Supreme Court's decision is not limited to state due process but referenced "due process" generally. *Boermeester*, 15 Cal.5th at 87.

Third, the state action requirement for state due process claims is *broader* than the state action requirement for federal due process claims, so because it was rejected by the California Supreme Court, it should necessarily be rejected here.[9] *See* Michael Asimow et al., Cal. Practice Guide: Administrative Law ¶ 3:3 (Rutter Group 2025) ("[T]he California Constitution . . . will sometimes provide greater protection than the federal Constitution and will never provide less.").

#### 4. Boermeester's contract claim fails because his assertions of breach are barred by issue preclusion.

The district court properly dismissed Boermeester's breach of contract claim because he cannot establish the essential element of breach. *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal.App.3d 1371, 1388 (1990). Boermeester alleges that USC made express contractual commitments to him regarding its disciplinary process and that USC violated its own policies by suspending him, failing to conduct a fair review of the incident, and finding him responsible for intimate partner violence. (ER-224–27.)

---

[9] In any event, there was no state action for the reasons explained below in Section III.A.

As noted above, the state courts found USC properly suspended Boermeester, that substantial evidence supported USC's finding that Boermeester committed intimate partner violence, and that there was no denial of fair process during Boermeester's disciplinary proceeding that resulted in his expulsion. *See supra* pp. 12–19. The state courts also found that USC complied with its own policies. *See Boermeester*, 15 Cal.5th at 96; *Boermeester*, 263 Cal.Rptr.3d at 272. Because Boermeester's contract claim rests on USC's alleged failure to "adhere to its stated policies" regarding his Title IX investigative process and its denial of his "procedural rights" (ER-224), questions which implicate the fairness of his disciplinary proceeding, it is barred by issue preclusion.

As explained below, Boermeester's breach of contract claim also fails on the merits because his disciplinary proceeding was fair. *See infra* Section III.B.

#### 5. Boermeester's promissory estoppel claim fails because he cannot establish that he was injured by relying on USC's policies.

To state a claim for promissory estoppel, Boermeester must allege that he reasonably relied on a clear and unambiguous promise and that

he was injured by his reasonable reliance. *Jones v. Wachovia Bank*, 230 Cal.App.4th 935, 945 (2014). Boermeester's promissory estoppel claim fails as a matter of law because he cannot establish that he was injured by relying on USC's promises.

Boermeester alleges that he reasonably relied, to his detriment, on USC's promise that it would not discriminate against him or deny him his procedural rights during his disciplinary process. (*See* ER-228.) But, as explained above, the state courts rejected the factual basis of these allegations by concluding that USC provided a fair and unbiased process. *See supra* pp. 12–19. Because the fairness of USC's disciplinary process and USC's purported bias were "actually litigated" and "necessarily decided" in state court, Boermeester is barred from relitigating these issues. *Lucido*, 51 Cal.3d at 341–42.

As explained below, Boermeester's promissory estoppel claim also fails on the merits. *See infra* Section III.B.

### 6. Boermeester's negligence claim fails because he cannot establish that USC breached a duty of care.

To state a claim for negligence, Boermeester must plead USC breached a duty of care. *Thomas v. Stenberg*, 206 Cal.App.4th 654, 662 (2012). He cannot do so.

Boermeester's negligence claim is based on the theory that USC owed him a duty to conduct a fair disciplinary process. (*See* ER-229.) He alleges USC breached this duty by failing to provide "the full protections of the disciplinary process" and subjecting him to a "biased and defective procedure." (ER-229.)

The state court concluded that Boermeester's disciplinary proceeding was fair and rejected his claims of bias. *See supra* pp. 12–19. Because those findings are final and binding here, they preclude Boermeester from establishing that USC breached a duty of care. *See Thompson v. Crestbrook Ins. Co.*, 81 Cal.App.5th 115, 125 (2022) ("[A]n issue decided in a prior proceeding establishes [issue preclusion] even if some factual matters or legal theories that could have been presented with respect to that issue were not presented." (quoting *Textron Inc. v. Travelers Cas. & Sur. Co.*, 45 Cal.App.5th 733, 747 (2020))).

And, as explained below, Boermeester's negligence claim fails on the merits. *See infra* Section III.C.

#### 7. Boermeester's IIED claim fails because he is precluded from establishing outrageous conduct.

To state a claim for IIED, Boermeester must plead (1) extreme and outrageous conduct by USC with the intent to cause, or reckless disregard of the probability of causing, emotional distress; (2) severe or extreme emotional distress; and (3) that USC's outrageous conduct was the actual and proximate cause of the emotional distress. *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 1001 (1993). "Liability for intentional infliction of emotional distress extends 'only to conduct so extreme and outrageous "as to go beyond all possible bo[u]nds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."'" *Coleman v. Republic Indem. Ins.*, 132 Cal.App.4th 403, 416 (2005) (quoting *Alcorn v. Anbro Eng'g, Inc.*, 2 Cal.3d 493, 499 n.5 (1970)).

Boermeester alleges that USC engaged in outrageous conduct by placing him on interim suspension, investigating him, and concluding that he committed intimate partner violence. (ER-229–31.) As explained above, the state court upheld Boermeester's interim suspension and

expulsion, concluded that Boermeester's disciplinary proceeding was fair, and found substantial evidence supported USC's decision that Boermeester committed intimate partner violence. *See supra* pp. 12–19. Because those findings were actually litigated and necessarily decided in state court and are final, they are binding and preclude Boermeester from establishing that USC's conduct was outrageous. *See Lucido*, 51 Cal.3d at 341–42.

In any event, as explained below, disciplining a student credibly accused of committing intimate partner violence is *not* outrageous. *See infra* Section III.D.

### E. Boermeester's arguments against issue preclusion are meritless.

Boermeester makes several more arguments against issue preclusion. None has merit.

Boermeester argues that issue preclusion does not apply because the state court "could not and did not adjudicate the federal statutory or constitutional claims raised here." (AOB 11, *see* AOB 28.) He asserts that the state mandamus proceeding was "limited" and did not provide for damages, discovery, or a full adjudication of his civil rights claims. (AOB 28.) But that is beside the point, as issue preclusion relates to the

*issues* litigated, not the scope of potential remedies available. *See Y.K.A. Indus., Inc. v. Redevelopment Agency of City of San Jose,* 174 Cal.App.4th 339, 356–57 (2009). Thus, Boermeester conflates claim preclusion, which requires "the *availability* of a claim in an earlier proceeding," *In re Nance*, __ F.4th __, No. 24-2745, 2025 WL 2908823, at *4 (9th Cir. Oct. 14, 2025), with issue preclusion, which prevents relitigation of a specific factual or legal *issue* that was already decided and applies in subsequent lawsuits involving the same or *different* claims. *See supra* p. 38; *Wassmann v. S. Orange Cnty. Cmty. Coll. Dist.*, 24 Cal.App.5th 825, 844 (2018).

Moreover, because Boermeester has "fail[ed] to point to facts that [he] was unable to present or how these facts would have affected the outcome," this Court should conclude that Boermeester "had a full and fair opportunity to litigate the issues" before the state court. *Ross v. Alaska*, 189 F.3d 1107, 1113 (9th Cir. 1999).

In any case, this Court has held that a California Civil Procedure Code section 1094.5 writ petition provides "an adequate opportunity for de novo judicial review." *Miller*, 39 F.3d at 1033 (citing *Eilrich*, 839 F.2d at 632). This Court has also held that the section 1094.5 procedure

provides plaintiffs a "meaningful opportunity" to raise constitutional claims. *Kenneally v. Lungren*, 967 F.2d 329, 333 (9th Cir. 1992). Those decisions are binding, and they defeat Boermeester's argument.

Boermeester also contends that a mandamus petition under section 1094.5 is only a "procedural" mechanism. (AOB 45.) But as this Court has recognized, a "§ 1094.5 writ petition permits a *substantive* inquiry into whether an administrative body 'proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion.'" *Doe*, 891 F.3d at 1153–54 (emphasis added) (quoting Cal. Civ. Proc. Code § 1094.5(b)(West 2012)).

## III. The district court properly dismissed Boermeester's state law and § 1983 claims for failure to state a claim.

### A. Boermeester's complaint fails to state a claim under § 1983.

#### 1. A private university's student disciplinary investigation is not state action.

To state a claim under § 1983, Boermeester must allege an injury caused by "state action." *Jensen*, 222 F.3d at 574 ("The 'color of law' requirement of § 1983 is treated as the equivalent of the 'state action' requirement under the Constitution."); *see Rendell-Baker*, 457 U.S. at

837 (noting the Fourteenth Amendment, "which guarantees due process, applies to acts of the states, not to acts of private persons or entities").

In *Rendell-Baker*, the U.S. Supreme Court held that a private school's determination whether to discharge its teachers is not state action. *Rendell-Baker*, 457 U.S. at 837–43. More recently, the Ninth Circuit, relying on *Rendell-Baker*, held that a private California university was not required to comply with constitutional due process requirements when enforcing Title IX and state antiharassment laws by investigating a sexual harassment complaint against a professor. *Heineke*, 965 F.3d at 1014. The court reaffirmed that "[r]eceipt of government funds is insufficient to convert a private university into a state actor." *Id.* at 1013. "Nor is compliance with generally applicable laws sufficient to convert private conduct into state action." *Id.*

Even if failure to comply with these laws subjects the private actor to penalties, there is no state action where the government does not dictate the result in a particular case. *Id.* at 1014. The court concluded that a private university "does not become a state actor merely by virtue of being required by generally applicable civil rights laws to

ameliorate sex (or any other form of) discrimination in educational activities as a condition of receiving state funding." *Id.*; *see Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 808, 814–16 (9th Cir. 2010) (holding charter school's publication of allegedly defamatory statements in connection with investigation of sexual harassment complaint against teacher was not state action); *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835–43 (9th Cir. 1999) (detailing application of numerous state-action tests).

USC is a private university and the individual defendants, Dahlinger Means and Dr. Carry, were USC's employees. (ER-181–82.) Under *Rendell-Baker* and *Heineke*, § 1983 and the Fourteenth Amendment do not apply to USC's investigation and decision to suspend and expel Boermeester.

#### 2. The allegations in Boermeester's complaint do not satisfy any of the state-actor tests.

Boermeester argues that the allegations in his complaint satisfy the tests for determining whether USC is a state actor. (*See* AOB 58–61.) He asserts that USC's adjudication of intimate partner violence is a "public function" because USC acted as "prosecutor, judge, and enforcer in a proceeding that bore all the attributes of a state criminal case."

(AOB 59.) Boermeester also contends USC is "entwine[d] with California's judicial and administrative enforcement mechanisms" because it "insisted" that he exhaust his judicial remedies in a mandamus action before filing his federal action. (AOB 60.) He further contends that state and federal officials[10] have used their coercive power—specifically the threat of lost federal funding—to influence USC to impose unconstitutional procedures like harsh Title IX investigations that discriminate against male students. (AOB 59–60.) He asserts the investigation of the U.S. Department of Education's Office for Civil Rights into USC's Title IX policies and procedures led to significant media scrutiny. (ER-210; *see* AOB 60.) In turn, this scrutiny supposedly compelled USC to be more aggressive in its investigations and adjudications of sexual misconduct complaints against men. (ER-211; *see* AOB 60.)

[10] Although Boermeester's complaint suggests that USC acted as both a federal and state actor, he has pleaded only violation of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983. (*See, e.g.*, ER-207, 211.) "Only state actors, not federal entities, are subject to the Fourteenth Amendment; accordingly, private entities may be subjected to § 1983 liability only under a *state* action theory." *Heineke*, 965 F.3d at 1014 n.3.

Boermeester's allegations are nearly identical to those this Court and other circuits have rejected as insufficient to show that a private university is a state actor. *See Heineke*, 965 F.3d at 1014 (9th Cir. 2020); *see also Doe v. Oberlin Coll.*, 60 F.4th 345, 354 (6th Cir. 2023). There is no reason to deviate from this Court's prior decisions holding that a private university's disciplinary investigation is not state action.

Contrary to Boermeester's assertion (AOB 60), he does not allege, nor could he, that the state government "commanded a particular result in, or otherwise participated in, *his specific case*," *Heineke*, 965 F.3d at 1014. This is fatal to his § 1983 claim. *See id.*; *see also Blum v. Yaretsky*, 457 U.S. 991, 1010 (1982) (finding no state action where government regulations did "not dictate the decision to discharge or transfer *in a particular case*" (emphasis added)); *see also Logan v. Bennington Coll. Corp.*, 72 F.3d 1017, 1027–28 (2d Cir. 1995) (concluding that a private college's creation of a sexual harassment policy at the urging of a state commission did not make the private college's firing of a professor a state action because the commission was not involved in the specific case).

Finally, Boermeester's contention that it is inappropriate to dismiss § 1983 constitutional claims at the motion to dismiss stage is mistaken. (AOB 61.) This Court must accept his allegations as true, not his legal arguments. *See Heineke*, 965 F.3d 1015 n.5 (dismissing § 1983 claim under Federal Rule of Civil Procedure 12(b)(6)). Because he has failed to plead any allegations sufficient to support his argument that USC acted under color of state law, his § 1983 claim fails as a matter of law. Thus, the district court properly dismissed his § 1983 claim.

### B. Boermeester's complaint fails to state a claim for breach of contract and promissory estoppel.

To prevail on his breach of contract claim, Boermeester must allege that USC breached a specific contractual provision. *Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.*, 116 Cal.App.4th 1375, 1391 & n.6 (2004).

Boermeester's complaint alleges USC breached its express contractual commitments to him by, among other things, imposing an interim suspension, failing to conduct "a fair and impartial review of the incident," and finding Boermeester "responsible for a violation of USC's policy on intimate partner violence . . . despite the absence of any evidence showing he caused Roe such harm." (ER-224–26.)

Boermeester fails to state a breach of contract claim because he does not identify a specific contractual promise breached by USC. *See Kashmiri v. Regents of Univ. of Cal.*, 156 Cal.App.4th 809, 837, 832 (2007) ("[G]eneral and vague declarations or promises" in university publications do not "creat[e] contractual obligations.").

Boermeester's contract claim also fails on the merits because his disciplinary proceeding was fair. Boermeester was provided notice and an opportunity to be heard. *See supra* pp. 41–42. USC's policies provided separate evidence hearings for both Boermeester and Roe, and USC complied with its policies by offering the parties the opportunity to attend their separate evidence hearings. *Boermeester*, 15 Cal.5th at 96. As the California Supreme Court concluded, USC was "not required to have gone further by conducting a live hearing with Boermeester in attendance and with Boermeester directly or indirectly cross-examining the witnesses and asking follow-up questions, either in person or virtually." *Id.* at 94–95.

Boermeester's promissory estoppel claim fails for the same reasons. Boermeester's promissory estoppel claim is based on allegations that USC breached promises that it would not "deny

[Boermeester] his procedural rights" or "discriminate against" him should he be investigated for violating USC's "policies." (ER-228.) These allegations are too vague to support a claim; they do not advise USC or the Court what promises are at issue or how they were breached. *See Kashmiri*, 156 Cal.App.4th at 832. Boermeester's promissory estoppel claim also fails on the merits because, as explained above, his disciplinary proceeding was fair. *See supra* pp. 12–19.

### C. Boermeester's complaint fails to state a claim for negligence.

To state a claim for negligence, Boermeester must plead that USC breached a duty of care. *Keech v. Berkeley Unified Sch. Dist.*, 162 Cal.App.3d 464, 468 (1984).

In his complaint, Boermeester alleges USC had a "university-student" relationship with Boermeester and owed him a duty "to conduct the disciplinary process with due care, to perform an investigation free from bias or conflict, and to ensure proper training to those responsible for investigating and adjudicating the alleged policy violations." (ER-229.) The district court properly dismissed Boermeester's negligence claim on the merits.

As explained above, Boermeester's state-law negligence claim is a relabeled version of the common law fair procedure claim that he lost in state court. *See supra* pp. 12–19. It fails on the merits for the same reasons it failed in state court. Boermeester cannot salvage his legally deficient fair process claim by relabeling it as a claim for negligence.

In any event, while California law requires universities to provide students with fair procedure, *Boermeester*, 15 Cal.5th at 79, 86, no authority supports the proposition that a university is negligent if it does *not* provide a fair procedure.

### D. Boermeester's complaint fails to state a claim for IIED.

Boermeester failed to state a claim for IIED because he failed to plead "outrageous" conduct, an essential element. *Christensen v. Superior Court*, 54 Cal.3d 868, 903 (1991). To be "outrageous," conduct must be so "extreme as to exceed all bounds of that usually tolerated in a civilized community." *Hughes v. Pair*, 46 Cal.4th 1035, 1050–51 (2009), *superseded by statute on other grounds as stated in Wawrzenski v. United Airlines, Inc.*, 106 Cal.App.5th 663, 699 (quoting *Potter*, 6 Cal.4th at 1001).

USC's conduct did not come close to the "outrageous" threshold. After receiving a report of Boermeester's serious misconduct, USC ordered his suspension, investigated the misconduct, oversaw a disciplinary proceeding, and expelled him for violating USC's policies. (*See* ER- 229–31.) USC acted carefully and deliberately to protect its students from serious misconduct. USC complied with its disciplinary policies, provided Boermeester notice of the allegations and an opportunity to be heard, and afforded Boermeester multiple layers of review before expelling him. *See supra* pp. 12–19. These actions are not so "extreme as to exceed all bounds of that usually tolerated in a civilized community." *Hughes*, 46 Cal.4th at 1050–51.

No California case has ever found IIED liability could be imposed on similar facts in the university/student context. And cases in which upsetting conduct has been found insufficiently outrageous as a matter of law underscore the propriety of the trial court's conclusion that USC's conduct did not rise to the level of outrageous conduct.

For example, in *Hughes*, 46 Cal.4th 1035, the Supreme Court affirmed the Court of Appeal's conclusion that a defendant's conduct was insufficiently outrageous to support an IIED claim, where

defendant, a fiduciary, attempted to coerce plaintiff into a sexual relationship, and told her in front of her 13-year-old son that "I'll get you on your knees eventually. I'm going to f*ck you one way or another." *Id.* at 1039–40, 1049–51 (citation modified); *see also Cochran v. Cochran,* 65 Cal.App.4th 488, 498 (1998) (holding defendant's death threat to plaintiff with whom he had an "intimate relationship gone bad" was not outrageous).

The facts here are even less severe than the conduct in *Hughes* and *Cochran*. USC gave Boermeester notice of the allegations against him and provided him with the opportunity to respond. *See Boermeester*, 15 Cal.5th at 96; *Boermeester*, 263 Cal.Rptr.3d at 272. USC always treated Boermeester professionally, affording him and his lawyer multiple opportunities for respectful communication. *See Boermeester*, 15 Cal.5th at 84, 94. If USC's conduct were "outrageous" enough to trigger IIED liability, any dissatisfied student could bring an IIED claim against his university. California law does not permit that "outrageousness" inflation. *See Hughes*, 46 Cal.4th at 1050–51.

In sum, the district court correctly concluded that Boermeeseter failed to state a claim for emotional distress because he failed to plead outrageous conduct.

## IV. Denying leave to amend was proper because any amendment would be futile.

Under Federal Rule of Civil Procedure 15(a), a district court has discretion to deny leave to amend for "futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Amendment would be futile if the proposed "amended complaint would also be subject to dismissal." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998); *see Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1038 (9th Cir. 2011) (permitting no leave to amend where "plaintiffs cannot state a plausible basis for relief" and new facts would not save them).

USC's motion to dismiss Boermeester's complaint was properly granted with prejudice and without leave to amend. Boermeester has not established a "reasonable chance of successfully stating a claim if given another opportunity." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1053 (9th Cir. 2003). As explained above, all of Boermeester's claims are barred by the judicial exhaustion doctrine and issue preclusion. *See supra* pp. 24–54. The defects in the complaint go to

the core of Boermeester's claims. They are not superficial or technical pleading burdens that he has failed to overcome. *Cf. Eminence Capital*, 316 F.3d at 1053.

Boermeester's claims also fail on their own terms for *legal* reasons, not for lack of factual detail. *See supra* pp. 24–65. Thus, he cannot cure the defects in his complaint by pleading more facts.

Boermeester argues that, if permitted to amend, he could add "more facts supporting state action, refin[e] his constitutional theories," and "recast his claims to avoid preclusion based on distinct facts, timeframes, or harms." (AOB 69.) But more allegations supporting state action would not cure the central failings of Boermeester's state action claim. *See supra* pp. 45–47, 54–59. And he fails to explain how he would "refin[e] his constitutional theories" and "recast his claims" to state his claims. The district court's denial of leave to amend was therefore appropriate because any amended complaint would still be subject to dismissal. *Cervantes*, 656 F.3d at 1043, 1046; *Steckman*, 143 F.3d at 1298.

In short, the district court correctly exercised its discretion to deny leave to amend because amendment would be futile. This Court should reject Boermeester's renewed request for leave to amend.

## CONCLUSION

This Court should affirm the judgment.

November 3, 2025

**HORVITZ & LEVY LLP**
JEREMY B. ROSEN
SCOTT P. DIXLER
LACEY L. ESTUDILLO
**PAZZANI & SANDHU LLP**
KAREN J. PAZZANI
JOSEPH V. MARRA, III
PUNEET K. SANDHU

By: s/Lacey L. Estudillo
LACEY L. ESTUDILLO

Attorneys for Defendants and Appellees
**UNIVERSITY OF SOUTHERN CALIFORNIA, GRETCHEN DAHLINGER MEANS, and AINSLEY CARRY**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 25-2332

I am the attorney or self-represented party.

**This brief contains** 12,301 **words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

☒ complies with the word limit of Cir. R. 32-1.

☐ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1

☐ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

☐ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

☐ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

- ☐ it is a joint brief submitted by separately represented parties.
- ☐ a party or parties are filing a single brief in response to multiple briefs.
- ☐ a party or parties are filing a single brief in response to a longer joint brief.

☐ complies with the length limit designated by court order dated

☐ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/Lacey L. Estudillo **Date** November 3, 2025

*(use "s/[typed name]" to sign electronically-filed documents)*